# EXHIBIT   7

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

--------------------------------------------x

THOMAS LAMARCO and DIANE LAMARCO,

              Plaintiffs,

                            Index No.

    - against -                 22 Civ. 4629

SUFFOLK COUNTY, New York, Commissioner RODNEY

HARRISON, Individually and in his Professional

capacity, Captain WILLIAM SCRIMA,

Individually, Sgt. WILLIAM WALSH,

Individually, Police Officer "John" PLIHCIK,

Individually, and "JOHN DOES 1-5",

Individually,

              Defendants.

--------------------------------------------x

              100 Veterans Memorial Highway

              Hauppauge, New York

              August 30, 2023

              11:27 a.m.

     EXAMINATION BEFORE TRIAL of

THOMAS LAMARCO, Plaintiff, taken by Defendant,

pursuant to Federal Rules of Civil Procedure,

and Order, held at the above-noted time and

place, before Kristen Stein, a Stenotype

Reporter and Notary Public within and for the

State of New York.

```
(1)
(2)    A P P E A R A N C E S:
(3)
(4)       THE BELLANTONI LAW FIRM
                Attorneys for Plaintiffs
(5)             Two Overhill Road, Suite 400
                Scarsdale, New York 10583
(6)
          BY: AMY L. BELLANTONI, ESQ.
(7)
(8)
          SUFFOLK COUNTY ATTORNEYS OFFICE
(9)             Attorneys for Defendants
                100 Veterans Memorial Highway
(10)            Hauppauge, New York 11788
(11)      BY: ARLENE ZWILLING, ESQ.
(12)
(13)
       A L S O   P R E S E N T:
(14)
                DIANE LAMARCO, WIFE
(15)
(16)
(17)
(18)
(19)
(20)
(21)
(22)
(23)
(24)
(25)
```

(1)

(2)          F E D E R A L   S T I P U L A T I O N S

(3)

(4)              IT IS HEREBY STIPULATED AND

(5)   AGREED by and between (among) counsel  for the

(6)   respective parties herein, that filing and

(7)   sealing being the same are hereby waived.

(8)

(9)              IT IS FURTHER STIPULATED AND AGREED

(10)  that all objections, except as  to the form of

(11)  the question, shall be reserved to the time of

(12)  the trial.

(13)

(14)              IT IS FURTHER STIPULATED AND AGREED

(15)  that the within deposition may be sworn to and

(16)  signed before any officer authorized to

(17)  administer an oath, with the same force and

(18)  effect as if  signed and sworn to before the

(19)  Court.

(20)

(21)                        oo0oo

(22)

(23)

(24)

(25)

(1)

(2) T H O M A S   L A M A R C O,

(3)          Plaintiff, having first been duly

(4) sworn by the Notary Public, in and of the

(5) State of New York, was examined and testified

(6) as follows:

(7)          **THE COURT REPORTER:  Please state**

(8)     **your name for the record.**

(9)          **THE WITNESS:  Thomas LaMarco.**

(10)          **THE COURT REPORTER:  Where do you**

(11)     **reside?**

(12)          **THE WITNESS:  16 Taylor Street,**

(13)     **Port Jefferson Station, New York 11776.**

(14) **EXAMINATION BY**

(15) **MS. ZWILLING:**

(16)     Q.    Good morning, Mr. LaMarco, as you

(17) already know from being present during the

(18) deposition of your wife, I'm Assistant County

(19) Attorney Arlene Zwilling, I'm going to be

(20) conducting your deposition today in a case

(21) which you have filed against Suffolk County

(22) and some Suffolk County employees.  Now, to

(23) save time, I will mention that I gave your

(24) wife instructions for the deposition at the

(25) beginning of the deposition, would you like me

(1)                    **T. LAMARCO**

(2)     **Abbe LaMarco, Inc.**

(3)           Q.      I take it you are a CPA?

(4)           **A.      Correct.**

(5)           Q.      When did you obtain that CPA?

(6)           **A.      '89.**

(7)           Q.      What sort of work do you do?

(8)           **A.      I'm a certified public accountant**

(9)     **of a public firm, public accountant firm.**

(10)          Q.      Yes, what type of accounting do

(11)    you do?

(12)          **A.      General accounting.**

(13)          Q.      Business as well as personal?

(14)          **A.      Business and personal, yes.**

(15)          Q.      Do you have a partner or partners

(16)    in that firm?

(17)          **A.      No longer, no.  Retired.  Partner**

(18)    **is gone from the firm.  Name remains.**

(19)          Q.      That would be Abbe?

(20)          **A.      Yes.**

(21)          Q.      When did Abbe retire?

(22)          **A.      It's been approximately seven,**

(23)    **eight years.**

(24)          Q.      Have you had any partners in the

(25)    firm since then?

```
 (1)                    T. LAMARCO
 (2)         A.      No.
 (3)         Q.      Does your firm have an office
 (4)   outside of your home?
 (5)         A.      Outside of my home?
 (6)         Q.      Yes.
 (7)         A.      Yes.
 (8)         Q.      Where is the office?
 (9)         A.      1352 Stony Brook Road in Stony
(10)   Brook, New York.
(11)         Q.      How long has it maintained that
(12)   office for?
(13)         A.      Approximately ten years.
(14)         Q.      Does your firm have any employees
(15)   at this time other than possibly yourself?
(16)         A.      Yes, two employees.
(17)         Q.      Are any of them CPAs?
(18)         A.      No.
(19)         Q.      Are either of them accountants?
(20)         A.      They are accountants, yes.
(21)   Bookkeepers, accountants.
(22)         Q.      What is your highest level of
(23)   education?
(24)         A.      Bachelor's degree.
(25)         Q.      From where?
```

```
(1)                        T. LAMARCO
(2)          A.        Adelphi University.
(3)          Q.        Was that in accounting?
(4)          A.        Excuse me?
(5)          Q.        Was that in accounting?
(6)          A.        Yes.
(7)          Q.        Did you take any medication,
(8)   prescription or nonprescription, in the past
(9)   twenty-four hours?
(10)         A.        Yes.
(11)         Q.        What medication did you take?
(12)         A.        I believe its's amodopril (sic).
(13)         Q.        For what illness?
(14)         A.        High blood pressure.
(15)         Q.        How long have you been on
(16)  medication for high blood pressure for?
(17)         A.        Maybe five years.
(18)         Q.        Was there any other medication
(19)  you took in the past twenty-four hours?
(20)         A.        No.
(21)         Q.        Was there any medication you were
(22)  supposed to take in the past twenty-four
(23)  hours --
(24)         A.        No.
(25)         Q.        -- that you did not take?
```

(1)                    T. LAMARCO

(2)              Did you sleep okay last night?

(3)        **A.      I slept wonderful.**

(4)        Q.      Are you currently in treatment

(5)   with a psychiatrist, psychologist, social

(6)   worker or other mental health care

(7)   professional?

(8)        **A.      I am not.**

(9)        Q.      Have you been in the last five

(10)  years?

(11)       **A.      No.**

(12)       Q.      Do you have any plans to seek

(13)  such treatment at this time?

(14)       **A.      I do not.**

(15)       Q.      I noticed that you are starting

(16)  to give your answers before I finish the

(17)  question, can I just remind you to slow down a

(18)  bit so that the reporter hears --

(19)       **A.      I'm sorry, yes.**

(20)       Q.      -- what we're saying accurately.

(21)       **A.      Uh-huh.**

(22)       Q.      Did you have a Suffolk County

(23)  pistol license at some time?

(24)       **A.      Yes.**

(25)       Q.      Have you ever held a license for

```
(1)                    T. LAMARCO
(2)    a firearm anywhere other than Suffolk County?
(3)         A.      No.
(4)         Q.      Have you ever applied for such a
(5)    license anywhere else?
(6)         A.      No.
(7)         Q.      How many children do you have?
(8)         A.      Three children.
(9)         Q.      That would be Thomas, Matthew and
(10)   Katherine that your wife mentioned?
(11)        A.      That's correct.
(12)        Q.      Were you previously married?
(13)        A.      No.
(14)        Q.      Now, just to move things along a
(15)   little quicker, I'll mention that you were
(16)   present as your wife testified about her
(17)   having taken your son, Matthew, for medical
(18)   care on several occasions; have you taken him
(19)   for medical care on any additional occasions?
(20)        A.      Additionally than what was
(21)   mentioned, no.
(22)        Q.      Do you know of him being treated
(23)   at the hospital for his mental health on any
(24)   occasion other than the occasions that were
(25)   mentioned by your wife?
```

(1)                    **T. LAMARCO**

(2)          Q.      Did you hear them speak with your

(3)    wife about whether she had a pistol license?

(4)          **A.      I did not.**

(5)          Q.      When did you first apply for a

(6)    pistol license?

(7)          **A.      I believe it was in the 90s.**

(8)    **Probably twenty-eight to thirty years ago, I'm**

(9)    **ball-parking that.**

(10)         Q.      Was there anything that prompted

(11)   your application for a pistol license at that

(12)   time?

(13)         **A.      No.**

(14)         Q.      Any particular reason you wanted

(15)   to have a pistol license?

(16)         **A.      No.**

(17)         Q.      Was the application approved when

(18)   you first submitted it?

(19)         **A.      Yes, it was.**

(20)         Q.      Did you have to meet with anyone

(21)   in connection with making that application?

(22)         **A.      Just the normal procedure of**

(23)   **applying for the license, there was a meeting**

(24)   **with the officer at the time of the**

(25)   **registration, and that was it.**

Case 2:22-cv-04629-GRB-JMW  Document 28-8  Filed 07/01/24  Page 12 of 29 PageID #: 255

(1)                       T. LAMARCO

(2)        Q.     An interview or just a --

(3)        **A.     An interview, yeah.**

(4)        Q.     Do you know who it was that

(5)   interviewed --

(6)        **A.     I really have no idea, it was**

(7)   **thirty years ago.**

(8)        Q.     Was your wife present at the

(9)   interview?

(10)        **A.     She was not.**

(11)        Q.     Do you know if she was

(12)   interviewed in connection with her

(13)   application?

(14)        **A.     In her own application?**

(15)        Q.     Yes.

(16)        **A.     I don't know.**

(17)        Q.     You were not present for any

(18)   interview?

(19)        **A.     No.**

(20)        Q.     Now, when your pistol license was

(21)   first issued, do you recall what weapons you

(22)   had on that license?

(23)        **A.     I do.**

(24)        Q.     What were they?

(25)        **A.     I believe it was a 38 Taurus.**

Case 2:22-cv-04629-GRB-JMW   Document 28-8   Filed 07/01/24   Page 13 of 29 PageID #: 256

(1)                    **T. LAMARCO**

(2)        Q.        Anything else?

(3)        **A.        Initially, I don't think so.  I**

(4)  **think that was the only one, initially.**

(5)        Q.        Did that change over time?

(6)        **A.        Initially -- yeah, subsequently,**

(7)  **I did add another pistol to that license.**

(8)        Q.        What was that?

(9)        **A.        I believe that was a Taurus 9mm.**

(10)        Q.        Did you maintain both of them or

(11)  did you trade one for the other?

(12)        **A.        No, I maintained both.**

(13)        Q.        Were there any changes in your

(14)  possessions of those two particular weapons

(15)  after that?

(16)        **A.        No.**

(17)        Q.        What is the status of your pistol

(18)  license at this time?

(19)        **A.        I believe it's suspended.**

(20)        Q.        When was it suspended?

(21)        **A.        Two years ago.  '21.  I'm**

(22)  **guessing, in that ballpark.**

(23)        Q.        Since the suspension, have you

(24)  sought to reapply for a pistol license?

(25)        **A.        I have not.**

(1)                    **T. LAMARCO**

(2)          Q.      Is there any reason why you have

(3)    not?

(4)              **MS. BELLANTONI:  Objection, you**

(5)          **can answer.**

(6)          **A.      It seemed kind of fruitless to**

(7)    **reapply when it was suspended.**

(8)          Q.      Have you had contact with the

(9)    police department to determine about the

(10)   prospect of reapplying?

(11)             **MS. BELLANTONI:  Objection --**

(12)         **A.      Reapplying, no.**

(13)             **MS. BELLANTONI:  -- you can**

(14)         **answer.  Just wait a few minutes after**

(15)         **she asks her question.**

(16)             **THE WITNESS:  Okay.**

(17)         Q.      Have you had contact with the

(18)   police department about your license since the

(19)   suspension?

(20)         **A.      About the suspension itself?**

(21)         Q.      Yes.

(22)         **A.      Yes.**

(23)         Q.      How many such contacts have you

(24)   had?

(25)         **A.      I believe it was two telephone**

(1)                     **T. LAMARCO**

(2)    **calls.**

(3)         Q.      When were those calls?

(4)         **A.      Probably within a week or two**

(5)    **weeks after receiving the letter saying the**

(6)    **license was suspended.**

(7)         Q.      Did you place those calls or were

(8)    they placed to you?

(9)         **A.      I placed the calls to the**

(10)   **licensing department.**

(11)        Q.      The first time you called, do you

(12)   know who you spoke with?

(13)        **A.      I honestly don't recall.  I mean**

(14)   **it's possible it was Plihcik, that's just the**

(15)   **name that I'm kind of remembering, but I'm not**

(16)   **sure.**

(17)        Q.      What was discussed during that

(18)   phone call?

(19)        **A.      I recall asking them what needed**

(20)   **to be done to have the license renewed, and**

(21)   **they had mentioned something about having a**

(22)   **doctor, you know, state that Matthew was**

(23)   **not -- not in a position to harm himself or**

(24)   **anyone else.  And that, you know, if he got**

(25)   **that information, that would possibly be the**

Case 2:22-cv-04629-GRB-JMW   Document 28-8   Filed 07/01/24   Page 16 of 29 PageID #: 259

```
 (1)                    T. LAMARCO

 (2)   first step in getting it reinstated.

 (3)        Q.     Did they say whether this doctor

 (4)   had to be someone who was treating Matthew or?

 (5)        A.     They didn't really specifically

 (6)   give me much information at all.

 (7)        Q.     So there was never a discussion

 (8)   of any particular doctor?

 (9)        A.     No.  It was very vague.

(10)        Q.     Did you respond when you were

(11)   given this information?

(12)        A.     Yes, I mentioned it to my wife

(13)   and I asked her to contact his doctor and --

(14)   and put that letter together.

(15)        Q.     Did you have any contact with

(16)   Matthew's doctor at the time?

(17)        A.     I did not.

(18)        Q.     Did there come a time when you

(19)   learned that the doctor could not provide the

(20)   letter?

(21)        A.     Yes.

(22)        Q.     How did you learn that?

(23)        A.     My wife mentioned it to me.

(24)        Q.     Now, after your wife mentioned

(25)   this to you, did you take any steps to see if
```

(1)                          T. LAMARCO

(2)    there was -- to obtain a letter from another

(3)    doctor?

(4)         A.      I did not.

(5)         Q.      Do you know if your wife did?

(6)         A.      I do not know.

(7)         Q.      When was the second conversation

(8)    you had with the police department after your

(9)    suspension?

(10)        A.      Probably shortly after the first.

(11)   I mean I -- that's all I recall after that.

(12)        Q.      Who did you speak with at that

(13)   time?

(14)        A.      I don't recall.  I do not believe

(15)   it was Plihcik, because I believe that they

(16)   said that person was on vacation, and I don't

(17)   even recall the details of the conversation.

(18)        Q.      Do you recall anything that was

(19)   discussed during that conversation?

(20)        A.      No.

(21)        Q.      Did you ever inform anyone at the

(22)   police department that Dr. Dooley would not

(23)   provide a letter?

(24)        A.      I don't believe so.

(25)        Q.      Now, after that second

Case 2:22-cv-04629-GRB-JMW  Document 28-8  Filed 07/01/24  Page 18 of 29 PageID #: 261

(1)                     T. LAMARCO

(2)   conversation, did you have any further

(3)   contact, either by phone or by mail, with the

(4)   police department concerning your pistol

(5)   license?

(6)         **A.      I do not believe so.**

(7)         Q.      After that second conversation,

(8)   did you take any further steps to lift the

(9)   suspension of your pistol license?

(10)        **A.      Yes.**

(11)        Q.      What were those steps?

(12)        **A.      That's when I contacted the**

(13)  **attorney.**

(14)        Q.      What attorney did you contact at

(15)  that time?

(16)        **A.      Ms. Bellantoni right here.**

(17)        Q.      Did you contact any other

(18)  attorneys prior to contacting Ms. Bellantoni?

(19)        **A.      I do not believe so.**

(20)        Q.      Where did you get

(21)  Ms. Bellantoni's name from?

(22)        **A.      I believe I looked up her**

(23)  **information online.**

(24)        Q.      Where online did you look?

(25)        **A.      I don't recall.**

(1)                        **T. LAMARCO**

(2)        Q.      Do you know if it was a website

(3)    or a Google search or a social media account

(4)    or something else --

(5)        **A.      I believe it was a Google search.**

(6)    **I mean, that's generally where I would look**

(7)    **for information like that.**

(8)        Q.      There came a point when you

(9)    retained Ms. Bellantoni?

(10)       **A.      Yes.**

(11)       Q.      Did you speak with any other

(12)   attorneys about your license situation at all

(13)   prior to retaining Ms. Bellantoni?

(14)       **A.      I did not.**

(15)       Q.      Have you spoken to anyone else

(16)   who Ms. Bellantoni represented at any time?

(17)       **A.      I have not.**

(18)       Q.      Have you reached out to anyone

(19)   who has been represented by Ms. Bellantoni?

(20)       **A.      I have not.**

(21)       Q.      Has anyone who claims to have

(22)   been represented by Ms. Bellantoni reached out

(23)   to you?

(24)       **A.      No.**

(25)       Q.      Do you have any weapons

Case 2:22-cv-04629-GRB-JMW   Document 28-8   Filed 07/01/24   Page 20 of 29 PageID #: 263

```
(1)                        T. LAMARCO
(2)    maintained in your home at this time?
(3)          A.     I do.
(4)          Q.     What would they be?
(5)          A.     I have some long rifles.
(6)          Q.     How many long rifles do you have?
(7)          A.     Approximately six or seven.
(8)          Q.     And are all of these weapons
(9)    currently maintained in your home?
(10)         A.     Yes.
(11)         Q.     Where in your home are they
(12)   maintained?
(13)         A.     They are in the master bedroom
(14)   locked closet.
(15)         Q.     You were present when your wife
(16)   testified that there is a safe, a gun safe, in
(17)   a closet?
(18)         A.     That's correct.
(19)         Q.     Is this the same closet that has
(20)   the gun safe that you just referred to or a
(21)   different closet?
(22)         A.     It's the same closet.
(23)         Q.     How many bedrooms are there in
(24)   your home?
(25)         A.     How many -- ?
```

(1)                     **T. LAMARCO**

(2)        Q.      Bedrooms.

(3)        **A.      Three bedrooms.**

(4)        Q.      Is it a one-story or two-story

(5)   house?

(6)        **A.      One story.**

(7)        Q.      Ranch house?

(8)        **A.      Ranch.**

(9)        Q.      Conventional ranch?

(10)       **A.      Yes.**

(11)       Q.      Any dormers, anything of that

(12)  nature?

(13)       **A.      Dormers, no.**

(14)       Q.      Who occupies the other bedrooms

(15)  at this time?

(16)       **A.      My son is in one and my other son**

(17)  **is in the other.**

(18)       Q.      How long has Matthew continuously

(19)  lived in your home for?

(20)       **A.      Continuously?**

(21)       Q.      Yes.

(22)       **A.      His whole life.**

(23)       Q.      How about Thomas?

(24)       **A.      Thomas, he may have lived on his**

(25)  **own for a few months, but pretty much himself**

Case 2:22-cv-04629-GRB-JMW  Document 28-8  Filed 07/01/24  Page 22 of 29 PageID #: 265

```
(1)                    T. LAMARCO
(2)   his whole life as well.
(3)         Q.     For how long has he been back in
(4)   your home?
(5)         A.     Continuously back in the home, I
(6)   don't know.
(7)         Q.     More than five years?
(8)         A.     I believe so, yeah.
(9)         Q.     Now, you were present earlier
(10)  when your wife testified that there is a
(11)  shotgun maintained in your home, do you also
(12)  have a shotgun in addition to these rifles?
(13)        A.     That's included in the numbers
(14)  that I said, yeah.  There's maybe two
(15)  shotguns; that one my wife mentioned and
(16)  there's another one.
(17)        Q.     Do you know how many shotguns
(18)  versus rifles you have?
(19)        A.     Please clarify.
(20)        Q.     Yes, you mentioned six or seven
(21)  long guns; is that correct?
(22)        A.     Uh-huh, yes.
(23)        Q.     Can you tell me how many of those
(24)  are shotguns and how many are rifles?
(25)        A.     Two would be shotguns and the
```

Case 2:22-cv-04629-GRB-JMW   Document 28-8   Filed 07/01/24   Page 23 of 29 PageID #: 266

(1)                     **T. LAMARCO**

(2)   **rest would be rifles.**

(3)           Q.      When did you acquire these

(4)   weapons?

(5)           **A.      The shotgun that my wife**

(6)   **mentioned, probably ten years ago.  And the**

(7)   **other ones were given to me by a friend many**

(8)   **years ago.  I don't know, ten, fifteen years**

(9)   **ago.**

(10)          Q.      Did you obtain any of these

(11)  weapons in the past five years?

(12)          **A.      In the past five years, no.**

(13)          Q.      Now, did you belong to a range at

(14)  any point?

(15)          **A.      When you say belong to a range?**

(16)          Q.      A range that has membership.

(17)          **A.      No.**

(18)          Q.      Was there a range or ranges that

(19)  you would go to on occasion?

(20)          **A.      Occasionally.**

(21)          Q.      What were they?

(22)          **A.      The range my wife mentioned is in**

(23)  **Medford on Route 112.**

(24)          Q.      Was there any other range that

(25)  you would occasionally go to?

```
(1)                    T. LAMARCO
(2)        A.      No.
(3)        Q.      Would you generally go alone or
(4)   would your wife go with you?
(5)        A.      Generally, my wife would come
(6)   with me, but there's probably a few occasions
(7)   I would go on my own.
(8)        Q.      How frequently would you
(9)   generally go?
(10)       A.      Not frequently.
(11)       Q.      What do you mean by that?
(12)       A.      Once every few months, maybe, if
(13)  that much.
(14)       Q.      Did your sons ever go with you?
(15)       A.      No.
(16)       Q.      Now, did you submit any paperwork
(17)  to the police department in an effort to
(18)  restore your license?
(19)       A.      Other than that letter that was
(20)  previously mentioned with my son's medical
(21)  issues, no.
(22)       Q.      But that was, if I understand you
(23)  correctly, the doctor would not provide that
(24)  letter; is that correct or was there --
(25)       A.      There was some other letter that
```

(1)                          T. LAMARCO
(2)  I believe I wrote trying to explain the
(3)  situation, and I believe I submitted something
(4)  like that.
(5)        Q.     Was it a letter or some other
(6)  kind of statement?
(7)        A.     I believe it was a letter.
(8)        Q.     Do you recall what it said?
(9)        A.     I really don't.  I mean, I think
(10) it said something to the effect of that we had
(11) the guns locked up in the safe, and there was
(12) no issue with my son and something like that.
(13) Just a vague explanation of the situation.
(14)        Q.     When was it that you submitted
(15) this document?
(16)        A.     It had to be, you know, very soon
(17) after the suspension letter came out.
(18)        Q.     Have you had any contact with
(19) anyone at the police department about your
(20) license since submitting that document?
(21)        A.     No.
(22)        Q.     Now, when you first received your
(23) pistol license, did you also receive a copy of
(24) the pistol licensing handbook?
(25)        A.     I believe I did.

Case 2:22-cv-04629-GRB-JMW Document 28-8 Filed 07/01/24 Page 26 of 29 PageID #: 269

(1)                    T. LAMARCO

(2)              MS. BELLANTONI:  I'll take that

(3)       under advisement.

(4)       Q.      Now, at the time your license was

(5)  suspended, did you have both of the firearms

(6)  that you mentioned earlier?

(7)       A.      I did.

(8)       Q.      Did you have to bring them to the

(9)  police department?

(10)      A.      I did.

(11)      Q.      Where did you go to bring them to

(12)  the police department?

(13)      A.      To 6th Precinct in Suffolk

(14)  County.

(15)      Q.      Did anyone go with you at the

(16)  time?

(17)      A.      I believe I was alone.

(18)      Q.      Do you know when you went there?

(19)      A.      No, but it had to be shortly

(20)  after I received the notice explaining that

(21)  the procedure was to turn them into the local

(22)  station.

(23)      Q.      What did you do with the weapons

(24)  when you arrived at the precinct?

(25)      A.      I brought them to the desk and

(1)                       T. LAMARCO

(2)    **told him I was informed that I must deliver**

(3)    **them to the desk.**

(4)         Q.      Did the person at the desk take

(5)    them or did they have you see someone else?

(6)         A.      **No, they took them and gave me a**

(7)    **receipt.**

(8)         Q.      Do you know the name of the

(9)    person at the desk that took your weapons?

(10)        A.      **I do not.**

(11)        Q.      Did you have any discussions with

(12)   that person about your license?

(13)        A.      **I did not.**

(14)        Q.      Did they ask any questions?

(15)        A.      **No, they didn't.**

(16)        Q.      Prior to the suspension of your

(17)   license that you're here about today, was your

(18)   license ever suspended?

(19)        A.      **It was not.**

(20)        Q.      Have you ever appeared in family

(21)   court?

(22)        A.      **I have -- I do not believe so,**

(23)   **no.**

(24)        Q.      Do you know if your son, Matthew,

(25)   was ever involuntarily committed?

Case 2:22-cv-04629-GRB-JMW   Document 28-8   Filed 07/01/24   Page 28 of 29 PageID #: 271

(1)                      T. LAMARCO

(2)          **A.        Discuss?**

(3)          Q.        Did any doctor ever discuss with

(4)     you, personally, the prospect of involuntarily

(5)     committing your son, Matthew?

(6)          **A.        I don't believe so.**

(7)          Q.        Do you know if any doctor had

(8)     such conversation with your wife?

(9)          **A.        I assume so, I don't -- I don't**

(10)    **know.**

(11)         Q.        You don't have any personal

(12)    knowledge of that?

(13)         **A.        No.**

(14)         Q.        Have any of your children ever

(15)    used any of the weapons that you have?

(16)         **A.        No.**

(17)         Q.        Have they ever asked to?

(18)         **A.        Have they ever asked to?**

(19)         Q.        Yes.

(20)         **A.        Not that I recall.**

(21)         Q.        Have any of your children ever

(22)    applied for a pistol license, to your

(23)    knowledge?

(24)         **A.        Not to my knowledge.**

(25)         Q.        Was your son, Matthew, ever

```
(1)                      T. LAMARCO

(2)                      CERTIFICATION

(3)

(4)   STATE OF NEW YORK   )

                          )  ss

(5)   COUNTY OF SUFFOLK   )

(6)

(7)        I, KRISTEN STEIN, a Shorthand Reporter

(8)   and Notary Public within and for the State of

(9)   New York, do hereby certify:

(10)       THAT the foregoing transcript is a true

(11)  and accurate transcript of my original

(12)  stenographic notes.

(13)       IN WITNESS WHEREOF, I have hereunto set

(14)  my hand this 30th day of August, 2023.

(15)

(16)

(17)            _____

(18)            KRISTEN STEIN

(19)

(20)

(21)

(22)

(23)

(24)

(25)
```