UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

THOMAS LAMARCO and DIANE LAMARCO,

                                          Plaintiff,

                                                            22–cv-4629 (GRB) (JMW)

             -against-

SUFFOLK COUNTY, New York, Commissioner
RODNEY HARRISON, Individually and in his
Professional capacity, Captain WILLIAM SCRIMA,
Individually, Sgt. WILLIAM WALSH, Individually,
Police Officer CIARA PLIHCIK, Individually,

                                          Defendants.

---

**MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

DATED:        Hauppauge, New York
              June 17, 2024
                              Respectfully submitted,

                              Christopher J. Clayton
                              Suffolk County Attorney
                              Attorney for Suffolk Defendants
                              County of Suffolk, Rodney Harrison,
                              William Scrima, William Walsh
                              and "John" Plihcik
                              H. Lee Dennison Building
                              100 Veterans Memorial Highway
                              P. O. Box 6100
                              Hauppauge, New York 11788

                              By:  Arlene S. Zwilling
                              Assistant County Attorney

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

SUMMARY JUDGMENT STANDARD ............................................................... 5

POINT I
THE LAMARCOS FAIL TO ESTABLISH A SECOND AMENDMENT VIOLATION ........................ 6

    A.   Defendants Are Not Burdened to Establish That Their Alleged Conduct
        Comports With the Second Amendment ........................................................ 6

    B.   Defendants' Alleged Actions Do Not Transgress the Second Amendment .................. 8

POINT II
THE COUNTY'S ASSERTED POLICY DOES NOT IMPLICATE THE
FOURTH AMENDMENT ................................................................................ 11

POINT III
THE LAMARCOS HAVE NOT ESTABLISHED *MONELL* LIABILITY ................................ 12

CONCLUSION ............................................................................................... 14

i

## TABLE OF AUTHORITIES

*Adickes v. S. H. Kress & Co.*,
　398 U.S. 144, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970) ........................................................ 5

*Anderson v. Liberty Lobby, Inc.*,
　477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ...................................................... 6

*Anthony v. City of New York*,
　339 F.3d 129 (2d Cir. 2003) ................................................................................................. 13

*Antonyuk v. Chiumento*,
　89 F.4th 271 (2d Cir. 2023) ............................................................................................7, 8, 9

*B & L Productions, Inc. v. Newsom*,
　2024 WL 2927734 (9th Cir. June 11, 2024) ......................................................................... 7

*Bradstreet v. Randall*,
　215 A.D.3d 1271, 186 N.Y.S.3d 756 (2023) ...................................................................... 10

*Cardinale v. Jones*,
　2024 WL 2132609 (E.D. Cal. May 13, 2024) ...................................................................... 8

*Celotex Corp. v. Catrett*,
　477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ..................................................... 5

*Charles v. Shea*,
　2024 WL 1895789 (N.Y. App. Div. May 1, 2024) ............................................................ 10

*Chislett v. New York Department of Sanitation*,
　2024 WL 1118852 (S.D.N.Y. March 14, 2024) .................................................................. 12

*City of Canton, Ohio v. Harris*,
　489 U.S. 378, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989) ................................................. 14

*City of Los Angeles v. Heller*,
　475 U.S. 796, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986) ................................................... 12

*City of Oklahoma City v. Tuttle*,
　471 U.S. 808, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985) ................................................... 13

ii

*City of St. Louis v. Praprotnik,*
   485 U.S. 112, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988) ........................................ 14

*D.C. v. Heller,*
   554 U.S. 570, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008) ...................................... 7

*D.H. Blair & Co. v. Gottdiener,*
   462 F.3d 95 (2d Cir. 2006) .................................................................................. 5

*Davies v. Warehouse Co. v. Bowles,*
   321 U.S. 144, 64 S.Ct. 474, 88 L.Ed. 635 (1944) ................................................ 10

*Gallo v. Prudential Residential Servs., Ltd. P'ship,*
   22 F.3d 1219 (2d Cir. 1994) ................................................................................ 5

*Gazzola v. Hochul,*
   88 F.4th 186 (2d Cir. 2023) ................................................................................. 8

*Giannullo v. City of New York,*
   322 F.3d 139 (2d Cir. 2003) ................................................................................ 5

*Jones v. Town of East Haven,*
   691 F. 3d 72 (2d Cir. 2012) ............................................................................... 13

*Juzumas v. Nassau Cnty., New York,*
   33 F.4th 681 (2d Cir. 2022) ............................................................................... 11

*McRorey v. Garland,*
   99 F.4th 831 (5th Cir. 2024) ............................................................................... 8

*Meadors v. Erie County Board of Elections,*
   2023 WL 4459601 (W.D.N.Y. July 11, 2023) ...................................................... 10

*Mintz v. Chiumento,*
   2024 WL 1361047 (N.D.N.Y. Mar. 20, 2024) ....................................................... 8

*Monell v. Dep't of Soc. Servs.,*
   436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) .......................................... 12

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
   597 U.S. 1, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022) .................................... 6, 7

*Ocean State Tactical, LLC v. Rhode Island,*
   95 F.4th 38 (1st Cir. 2024) .................................................................................. 8

iii

*Reese v. Bureau of Alcohol Tobacco Firearms & Explosives,*
    647 F. Supp. 3d 508 (W.D. La. 2022) ............................................................................... 9

*Roe v. City of Waterbury,*
    542 F.3d 31 (2d Cir. 2008).................................................................................................. 14

*Rubio v. Cnty. of Suffolk,*
    2007 WL 2993833 (E.D.N.Y. Oct. 9, 2007)....................................................................... 13

*Soto v. Gaudett,*
    862 F.3d 148 (2d Cir. 2017)................................................................................................ 6

*United States v. Tilotta,*
    2022 WL 3924282 (S.D. Cal. Aug. 30, 2022).................................................................... 7

*Vermont Teddy Bear Co. v. 1-800 Beargram Co.,*
    373 F.3d 241 (2d Cir. 2004)................................................................................................ 5

**PRELIMINARY STATEMENT**

The County of Suffolk (sued herein as "Suffolk County, New York") (the "County"), Commissioner Rodney Harrison, Captain William Scrima, Sgt. William Walsh and Police Officer Ciara Plihcik, defendants in this action pursuant to 42 U.S.C. §1983, submit this memorandum of law in opposition to the motion of plaintiffs Thomas LaMarco ("Thomas") and Diane LaMarco ("Diane") (collectively, the "LaMarcos") for summary judgment pursuant to Rule 56 against the County.[1]

The LaMarcos' claim in this action is that the April 2021 suspension of their New York State pistol licenses by defendants abridged their rights under the Second and Fourth Amendments. Their licenses were suspended because of a "mental health assist" involving their adult son Matthew who resides in their home and their failure to notify the Pistol Licensing Bureau ("PLB") of the Suffolk County Police Department ("SCPD") of the mental health assist as required by the PLB Handbook. The LaMarcos contend that the suspensions were the result of a Suffolk County policy of "banning the possession of handguns by individuals who have no disqualifiers to possession of firearms under state or federal law but (1) reside with a person [the] SCPD considers to be 'prohibited' from possessing firearms and/or 2) 'disobey' the Pistol License Bureau Handbook" (p. 1, Plaintiffs' Memorandum of Law).

Defendants deny that the LaMarcos' constitutional rights were violated by the suspensions and deny that the County has a policy which triggered the violation.

The facts of this case are more fully set forth in Defendants' Counterstatement to Plaintiff's Rule 56.1 Statement and Statement of Additional Material Facts to which the Court

---

[1] The LaMarcos do not seek summary judgment against the other defendants.

**1**

is respectfully referred in the interest of brevity. The most pivotal facts as follows.

On February 16, 2006, Thomas signed a Pistol License Holder Handbook Receipt which stated:

> I the above Suffolk County Pistol License holder, acknowledge receipt of my copy of the PISTOL LICENSE INFORMATION HANDBOOK and I understand that as a pistol license holder, I am responsible to know the contents of this book. I also understand that the failure to comply with the rules and regulations in the handbook may result in the suspension and or revocation of my Suffolk County Pistol License.

(¶ 102, Exhibit O).[2]

On October 20, 2010, Diane signed a Pistol License Applicant Handbook Receipt which stated:

> Notification responsibilities are explained fully in the PISTOL LICENSE INFORMATION HANDBOOK.... I, the above Suffolk County Pistol License applicant, acknowledge receipt of my copy of the PISTOL LICENSE.INFORMATION HANDBOOK...I will be responsible to know the contents of this book. I also understand that the failure to comply with the rules and regulations in the handbook may result in suspension and/ or revocation of any Suffolk County Pistol License that may be issued to me as a result of this application.

(¶ 103, Exhibit P).

On August 28, 2016, Diane called the SCPD to report that Matthew, who was bi-polar, was having a psychiatric emergency and experiencing delusional and incoherent thoughts

---

[2] Paragraph and exhibit references are to the paragraphs of and exhibits to Defendants' Counterstatement to Plaintiff's Rule 56.1 Statement and Statement of Additional Material Facts.

because he was not taking his medication. Diane told the 911 operator that Matthew "will probably give a hard time" to responders. Matthew was transported to Mather Hospital for emergency psychiatric evaluation. The Mental Health Assistance Incident Report completed by the responding police officer states "no pistol permit" (¶3, Exhibits A and B).

On July 30, 2017, Diane again contacted the SCPD and reported that Matthew hadn't been taking his medication, was walking around with a knife, and she was concerned for his wellbeing. Matthew was transported to Stony Brook Hospital by the SCPD for emergency psychiatric evaluation. The Mental Health Assistance Report prepared by the responding police officer states "pistol lic. check-neg" (¶ 3, Exhibits C- E)

On March 16, 2019, the LaMarcos called the SCPD for assistance with Matthew because he was possibly under the influence of alcohol, prescription psychiatric medication and marijuana, had used heroin previously, and they did not know if he had used heroin on that occasion. He was transported to Mather Hospital for emergency psychiatric evaluation and treatment. The SCPD's Incident Data form states "no pistol license possessed, no pistol license on premises." The same language is contained in the Field Report prepared by the responding police officer (¶3, Exhibits F and G).

The LaMarcos never notified PLB of any of these three occasions when Matthew was taken for emergency psychiatric evaluation (¶ 106, Exhibit S).

On April 9, 2021, defendant Sargeant William Walsh ("Walsh") of the PLB sent a Pistol License Notice of Suspension to Diane. The notice stated that her license was suspended "as a result of a mental health assist that occurred involving a member of your household and your failure to notify this office" (¶ 35, 40, 41, 62, 99 and 100 Exhibits K and N). On April 12, 2021, Walsh sent a similar notice to Thomas which informed him that his license was being

3

suspended "as a result of a mental health assist involving a member of your household and your failure to notify this office" (¶ 35, 40, 41, 62, 99 and 100 Exhibits J and N).

The suspension letters also directed each of the LaMarcos to submit a sworn statement thoroughly explaining in detail the circumstances surrounding the incident in their own words.  The LaMarcos failed to comply with this direction. Instead, they submitted a single unsworn letter and two blank "statements," one in the name of each of them but bearing apparently identical illegible signatures. Both "statements" were notarized by Tom, contrary to N.Y. Comp. Codes R. & Regs. tit. 19, § 182.3(5) which disqualifies a notary from "perform[ing] notarial acts for transactions in which the notary is a party" (¶35, Exhibits J, K and L)

In April 2021, the operative PLB Handbook, in Section 4 of Chapter 4 Duties and Liabilities of a License Holder listed "Incidents that require you to notify the Licensing Bureau...within 24 hours of occurrence:" The list included "11. Evaluation of any member of your immediate household for mental health issues." The 2016 edition of the Handbook likewise required that a licensee notify PLB within 24 hours "[w]hen any member of [their] household receives professional treatment for mental health issues." Further, the 2016 Handbook also provided that a licensee's failure to comply with the notification requirements was grounds for suspension and/or revocation of their license (¶ 107 and 105, Exhibits Q and R).

PLB informed the LaMarcos that a note from a physician stating that there are no issues with Matthew living in a home with firearms was necessary to lift the suspensions. Matthew's doctor would not provide them with such a letter (Exhibit S). They also contacted Melissa Socich, a non-physician mental health counselor who had treated Matthew. She too

would not provide the requested letter (¶ 36, 87, 107 and 108, Exhibits I and T).

The suspension of their licenses due to their failure to notify PLB as they had agreed and the refusal of two mental health professionals to approve weapons being kept in Matthew's home did not give the LaMarcos pause. Instead of reconsidering the wisdom of keeping handguns in their home, they brought this action for money damages and equitable relief.

## SUMMARY JUDGMENT STANDARD

It is well settled that summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56 (c)*; See also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2551, 91 L. Ed. 2d 265, 265 (1986).

It is the movant's burden to show that no genuine factual dispute exists. *Vermont Teddy Bear Co. v. 1-800 Beargram Co*., 373 F.3d 241, 244 (2d Cir. 2004) citing *Adickes v. S. H. Kress & Co*., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970).  In reviewing a summary judgment motion, the Court must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor. *Id*., citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003). The trial court's task at the summary judgment stage is limited to discerning whether there are genuine issues of material fact to be tried, not deciding them. Its duty is confined at this point to issue-finding. It does not extend to issue resolution. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied. *D.H. Blair*

*& Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006). Summary judgment should be denied if, when the party against whom summary judgment is sought is given the benefit of all permissible inferences and all credibility assessments, a rational factfinder could resolve all material factual issues in favor of that party. *Soto v. Gaudett*, 862 F.3d 148, 158 (2d Cir. 2017) citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Clearly, the LaMarcos have not eliminated all material issues of fact that bear upon their claim against the County. Furthermore, their legal arguments are incorrect. Accordingly, summary judgment cannot properly be granted against the County.

### POINT I

### THE LAMARCOS FAIL TO ESTABLISH A SECOND AMENDMENT VIOLATION

**A.  Defendants Are Not Burdened to Establish That Their Alleged Conduct Comports With the Second Amendment.**

The LaMarcos make no effort to explain how the suspension of their pistol licenses supposedly constitutes a Second Amendment violation. Rather, they audaciously assert that they are not required to do so. They contend that under *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022) ("*Bruen*"), decided after the suspensions, defendants must affirmatively justify their actions because the possession and carrying of handguns for self-defense is within the "plain text" of the Second Amendment.

The fundamental and fatal flaw of this argument is its presumption that the conduct the LaMarcos seek to engage in is actually covered by the amendment's plain text. While granted *Bruen* places the burden on the government to justify regulation of conduct that lies within the amendment's "plain text", it supports no presumption that all conduct touching

6

upon the possession and carrying of firearms for self-defense is encompassed by the "plain text." *Bruen* makes clear that before the burden switches to the government to defend its regulatory action, it must be shown that the conduct at issue is within the ambit of the "plain text" of the Second Amendment. *Bruen*, 597 U.S. at 31-33, 142 S.Ct. at 2133-35 (discussing three-part analysis required to determine whether plaintiffs' conduct fell within "plain text").

*Bruen* certainly does not define the borders of "plain text" as sweepingly as the LaMarcos suggest. To the contrary, Bruen reaffirmed the principle that the right to keep and bear arms is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose" quoting *D.C. v. Heller*, 554 U.S. 570, 626, 128 S. Ct. 2783, 2816, 171 L. Ed. 2d 637 (2008). See *Antonyuk v. Chiumento*, 89 F.4th 271, 295–297 (2d Cir. 2023). "The Supreme Court has made clear that the Second Amendment does not speak to all restrictions that impact firearms in any way. *B & L Productions, Inc. v. Newsom*, 2024 WL 2927734, at *8, ___ 4th ___ (9th Cir. June 11, 2024) citing *Bruen*, 597 U.S. at 81, 142 S.Ct. 2111) (limitation on extent to which "plain text" protects right to acquire firearms is "fully consistent with *Bruen*"). It has been repeatedly articulated by the Supreme Court that the right secured by the Second Amendment is not unlimited. *Bruen*, 597 US. at 21, 142 S. Ct. at 2168. See *United States v. Tilotta*, 2022 WL 3924282, at *6 (S.D. Cal. Aug. 30, 2022) citing *Heller*, 554 U.S. at 626 (noting that "*Heller, McDonald*, and *Bruen* all state that the Second Amendment right is not absolute and is thus subject to reasonable limitations").

Tellingly, the LaMarcos point to no authority that supports their essentially boundless reading of *Bruen's* concept of "plain text." Defendants have been unable to locate any controlling or even persuasive authority for the proposition that the Second Amendment's "plain text" creates a right to possess and carry handguns without regard to a cohabitant's

need for emergency mental health treatment, and free of state and local reporting requirements and administrative regulations.

In the apparent absence of any legal foundation for the overly expansive reading of "plain text" offered by the LaMarcos, there is no basis for shifting the burden of persuasion to defendants.

Lastly, it cannot be overlooked that the events at issue occurred prior to *Bruen*. It is by no means clear that *Bruen* applies retroactively.

**B.      Defendants' Alleged Actions Do Not Transgress the Second Amendment.**

It is not merely that the LaMarcos' proposed conduct cannot be presumed to be governed by the Second Amendment's "plain text." Not all regulation within the umbrella of the "plain text" is forbidden. Numerous decisions issued by the federal courts post-*Bruen* have approved a broad spectrum of restrictions on the ability to possess and carry firearms, the "plain text" provision notwithstanding. See e.g., *Antonyuk v. Chiumento*, 89 F.4th 271, 327 (2d Cir. 2023) ("good moral character" license requirement not impermissible); *Gazzola v. Hochul*, 88 F.4th 186, 196 (2d Cir. 2023) (commercial regulation of firearms dealers not so restrictive as to implicate Second Amendment); *Mintz v. Chiumento*, 2024 WL 1361047, at *16 (N.D.N.Y. Mar. 20, 2024) (restrictions on carrying firearms in places of worship and summer camps likely constitutional); *McRorey v. Garland*, 99 F.4th 831 (5th Cir. 2024) (expanded background checks for 18-20 year old purchasers with up to a ten day waiting period are permissible); *Ocean State Tactical, LLC v. Rhode Island*, 95 F.4th 38 (1st Cir. 2024) (ban on high capacity magazines likely does not transgress Second Amendment); *Cardinale v. Jones*, 2024 WL 2132609, at *9–10 (E.D. Cal. May 13, 2024) (requiring owners of firearms and ammunition to undergo a background check, fill out a form, and pay a fee before their

**8**

property will be returned by law enforcement does not abridge Second Amendment); *Reese v. Bureau of Alcohol Tobacco Firearms & Explosives*, 647 F. Supp. 3d 508 (W.D. La. 2022) ("Second Amendment does not protect the ability of 18 to 20-year-olds to purchase handguns from federal firearms licensees").

Of particular significance is that the Second Circuit has held that an applicant's cohabitants may be considered in assessing who should have access to handguns. *Antonyuk*, 89 F.4th at 329 (sustaining New York State's requirement that license applicants provide information about their current spouse or domestic partner and cohabitants). The "cohabitant provision" was held to be constitutional because intended to facilitate inquiries into "the applicant's close associates for information relevant to the good-moral-character evaluation and assist in identifying red flags that may cast doubt on the applicant's ability to use firearms safely." *Id.* at 329. The requirement "does not demand information with constitutional implications or in which the applicant has any special interest in concealing." *Id.* at 330. Importantly, the Court of Appeals agreed that the "cohabitant provision" is proper for facilitating inquiry not only about the applicant, but the cohabitant as well. *Id.* ("For instance, if an applicant living with multiple young children was unwilling or unable to secure firearms from meddling, surely a licensing officer could conclude that the applicant cannot 'be entrusted with a weapon and to use it only in a manner that does not endanger [him]self or others'").

Furthermore, the New York State Legislature has responded to *Bruen* by re-granting the discretion previously entrusted to Suffolk County to suspend pistol licenses. To address changes mandated by the Supreme Court decision, New York enacted the omnibus Concealed Carry Improvement Act. See *Antonyuk*, 89 F.4th at 289. The CCIA included the re-enactment

**9**

of N.Y. Penal Law 400.00 (11) which provides that "a license may be revoked and cancelled at any time in the city of New York and the counties of Nassau and Suffolk, by the licensing officer…" *N.Y. Legis. L.2022, c. 371, § 1.* The New York state courts have confirmed that under the amended § 400.00, a licensing officer's decisions are discretionary and not ministerial. See e.g., *Charles v. Shea*, 2024 WL 1895789 (N.Y. App. Div. May 1, 2024); *Bradstreet v. Randall*, 215 A.D.3d 1271, 186 N.Y.S.3d 756 (2023) (4th Dept. 2023) ("A licensing officer, such as respondent, is vested with broad discretion in determining whether to revoke a permit"). Presumably, the state legislature believed its broad grant of discretion to Suffolk County to revoke or cancel pistol licenses to be consistent with the Second Amendment. See e.g., *Meadors v. Erie County Board of Elections*, 2023 WL 4459601, at *9 (W.D.N.Y. July 11, 2023) quoting *Davies v. Warehouse Co. v. Bowles,* 321 U.S. 144, 153, 64 S.Ct. 474, 88 L.Ed. 635 (1944) (requiring plaintiffs to prove state statute unconstitutional because "[s]tate statutes, like federal ones, are entitled to the presumption of constitutionality").

It cannot be overlooked that at bottom, what the LaMarcos truly seek to challenge is *any* local control of firearms licensing and carriage. That their goal is a blanket prohibition on all local regulation is evident from their framing of the purported policy which they attack. In their words, the policy is one of "banning the possession of handguns who have no disqualifiers to possession of firearms under state or federal law but (1) reside with a person [the] SCPD considers to be 'prohibited' from possessing firearms and/or 2) 'disobey' the Pistol License Bureau Handbook" (p.1, Plaintiffs' Memorandum of Law). In essence, their contention is that the policy transgresses the Second Amendment because it prohibits conduct not prohibited by the federal or state government. Plainly, this argument would render §400.00's post-*Bruen* grant of discretion to local authorities a nullity. Moreover,

defendants submit respectfully that nothing in the language of the Second Amendment, *Bruen, Heller* or *McDonald* prohibits local regulation of firearms.

Surely, regardless of whether or not the LaMarcos' desire to possess and carry handguns could be considered within the "plain text" of the Second Amendment, the suspensions of their pistol licenses did not violate the Second Amendment given the reasons for the suspensions.

## POINT II

### THE COUNTY'S ASSERTED POLICY
### DOES NOT IMPLICATE THE FOURTH AMENDMENT

In their own words**,** the LaMarcos admit that their "ability to exercise the presumptively guaranteed right to possess handguns cannot occur without a valid New York State pistol license." Yet, paradoxically, they argue that it is the County's policy, as opposed to the New York Penal Law, that deprived them of their Fourth Amendment rights when they were required to surrender their handguns while under suspension.

The argument does not merit serious consideration. N.Y. Penal Law § 400.00 (11) (c) requires that "[i]n any instance in which a person's license is suspended such person shall surrender such license to the appropriate licensing official and any and all firearms." The Second Circuit has squarely rejected the notion that a county's enforcement of § 400.00 (11) (c) is local policy as opposed to state law. *Juzumas v. Nassau Cnty., New York*, 33 F.4th 681, 687 (2d Cir. 2022) (dispute with "mandatory language" of § 400.00 (11) (c) "rests with state law…").

**POINT III**

**THE LAMARCOS HAVE NOT ESTABLISHED**
***MONELL* LIABILITY**

Inarguably, a municipality cannot be held liable under § 1983 unless the plaintiff demonstrates both that their constitutional rights were transgressed *and* that a municipal policy was the cause of the violation. *City of Los Angeles v. Heller*, 475 U.S. 796, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986) citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point"). The LaMarcos do not make either branch of this required showing.

First and most obvious is that as explained above, the LaMarcos' civil rights were not violated. Since their constitutional rights were not abridged, the County's alleged policy is beside the point.

Next, to establish the "official policy or custom" requisite to a *Monell* claim, a plaintiff must prove one of the following: "(1) a formal policy; (2) actions taken or decisions made by final municipal policymakers that caused the violation of plaintiff's rights; (3) a practice so persistent and widespread that it constitutes a 'custom or usage' and implies the constructive knowledge of policymakers; or (4) a failure to properly train or supervise municipal employees that amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact." *Chislett v. New York Department of Sanitation*, 2024 WL 1118852, at *5, ___F.Supp.3d ___ (S.D.N.Y. March 14, 2024). However, the LaMarcos do not establish that the claimed policy actually exists, let alone that it resulted from action or inaction by County policymakers.

**12**

They do not make out that the claimed policy exists because they point to no other instance of a comparable license suspension by the County. They do not allege that the license of anyone other than themselves was suspended on the same dual grounds- a mental health assist involving a cohabitant and the licensee's failure to notify PLB of the assist as required by the Handbook. In fact, they adduce no evidence regarding any other license suspensions of any sort. Indisputably, the policy cannot be deemed proven based only on what happened to the LaMarcos alone. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 820–821, 105 S. Ct. 2427, 2434–35, 85 L. Ed. 2d 791 (1985). Needless to say, their failure to provide evidence of similar suspensions cuts against any contention that the County had a "persistent and widespread" practice of comparable suspensions.

They also fail to establish any involvement by a County policymaker. They adduce no evidence that a policymaker was aware of analogous suspensions by subordinates but consciously chose to ignore them. See *Jones v. Town of East Haven*, 691 F. 3d 72, 81 (2d Cir. 2012). They draw no evidentiary connection between a policymaker's decision as to how personnel should be trained and supervised and the suspensions.  Notaby, the LaMarcos do not even claim that a County policymaker---the County Legislature, the County Executive or the Police Commissioner[3] ----had any involvement in setting the supposed policy.

Rather, they rely on the actions of defendants Walsh and Plihcik as the foundation for their *Monell* claim. Walsh and Plihcik however, are a sergeant and police officer respectively, far beneath the rank of policymakers. See *Rubio*, at \*6 citing *Anthony v. City of New York*, 339 F.3d 129, 139-40 (2d Cir. 2003) (while sergeant may have discretion in handling situations,

---

[3] "The County Legislature is the Suffolk County policymaker for *Monell* purposes although the Police Commissioner may bind the County. *Rubio v. Cnty. of Suffolk*, 2007 WL 2993833 (E.D.N.Y. Oct. 9, 2007), *aff'd*, 328 F. App'x 36 (2d Cir. 2009).

he "lacks a sufficient role in the formulation of overall police department policy to be considered a final decision-maker for § 1983 purposes"). See *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S. Ct. 915, 924, 99 L. Ed. 2d 107 (1988) (explaining that "only those municipal officials who have 'final policymaking authority' may by their actions subject the government to §1983 liability"). Indeed, Walsh and Plihcik are not even in charge of PLB. Captain Scrima, whom the LaMarcos include as a defendant, outranks them. The LaMarcos do not claim that he had any role in creating the alleged policy.

Because the LaMarcos have not shown that County policymakers formulated or enabled a flawed policy that drove a violation of their civil rights, they have not established their Monell claim. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 1205, 103 L. Ed. 2d 412 (1989).

**CONCLUSION**

Plaintiff's motion for summary judgment against defendant County of Suffolk should be denied.

Dated:  Hauppauge, New York
    May 17, 2024

CHRISTOPHER J. CLAYTON
Suffolk County Attorney
Attorney for Defendants
Office and P.O. Address
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, New York 11788

By:    */s/ Arlene S. Zwilling*
      Arlene S. Zwilling
      Assistant County Attorney

**14**
