UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
THOMAS LAMARCO and DIANE LAMARCO,

                        Plaintiff,                      22 Civ. 4629 (GRB) (JMW)

   -against-

SUFFOLK COUNTY, New York, Commissioner
RODNEY HARRISON, Individually and in his
Professional capacity, Captain WILLIAM SCRIMA,
Individually, Sgt. WILLIAM WALSH, Individually,
Police Officer CIARA PLIHCIK, Individually,

                        Defendants.
---------------------------------------------------------------x

# REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF PLAINTIFFS'
# MOTION FOR SUMMARY JUDGMENT

**THE BELLANTONI LAW FIRM, PLLC**
*Attorneys for Plaintiffs*
**2 Overhill Road, Suite 400**
**Scarsdale, New York 10583**
**abell@bellantoni-law.com**

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................. i

I. THE COUNTY MISCHARACTERIZES THE *BRUEN* TEST ............................... 1

II. THE COUNTY FAILED TO JUSTIFY ITS REGULATIONS UNDER *BRUEN* ............... 2

    A.  None of the Cited Cases Prohibit An Individual From Possessing Firearms Based on the Conduct and/or Firearms Ineligibility of A Third Party ........................... 2

    B.  *Antonyuk* Provides No Safe Haven for the County ...................................................... 3

    C.  *Rahimi* Forecloses the Constitutionality of the County's Regulations ..................... 5

III. DEFENDANTS ARE LIABLE FOR FOURTH AMENDMENT VIOLATIONS ............... 6

IV.  PLAINTIFFS ESTABLISHED *MONELL* LIABILITY ........................................................ 7

CONCLUSION ........................................................................................................... 9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amnesty Am. v. Town of W. Hartford*,
  361 F.3d 113 (2d Cir. 2004) .................................................................................................. 7

*Antonyuk v. Chiumento*,
  89 F.4th 271 (2d Cir. 2023) ............................................................................................... 3, 4

*Forman v. Mt. Sinai Med. Ctr.*,
  128 F.R.D. 591 (S.D.N.Y. 1989) ........................................................................................... 1

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) .............................................................................................................. 1

*Monell v. Dep't of Soc. Servs. of City of New York*,
  436 U.S. 658 (1978) .............................................................................................................. 7

*NYSRPA v. Bruen*,
  597 U.S. 1 (2022) .................................................................................................................. 2

*Pembaur v. City of Cincinnati*,
  475 U.S. 469 (1986) .............................................................................................................. 7

*Torcivia v. Suffolk Cnty., New York*,
  409 F. Supp. 3d 19 (E.D.N.Y. 2019) ................................................................................. 8, 9

*United States v. Cruikshank*,
  92 U.S. 542, 23 L.Ed. 588 (1876) ......................................................................................... 1

*United States v. Rahimi*,
  2024 WL 3074728 (U.S. June 21, 2024) .............................................................................. 1

*Velez v. DiBella*,
  77 A.D.3d 670 (2d Dept. 2010) ............................................................................................ 3

*Weinstein v. Krumpter*,
  386 F. Supp. 3d 220 (E.D.N.Y. 2019) .................................................................................. 3

**Statutes**
18 U.S.C. 922(g) ........................................................................................................................ 5
N.Y. Penal Law § 400.00(1) .................................................................................................. 6, 7
N.Y. Penal Law § 400.00(1)(b) .............................................................................................. 4, 6
N.Y. Penal Law § 400.00(1)(n) .................................................................................................. 6
N.Y. Penal Law § 400.00(11) ..................................................................................................... 6

To escape liability, the County packs its legal brief with misleading and false information. From the mischaracterization of the *Bruen* test, *Antonyuk*'s analysis of the State's "moral character" requirement and § 400.00(11), to the twisted logic underlying the defense to Plaintiffs' Fourth Amendment claims, this conduct is "so objectively unreasonable that [the County] necessarily must have been acting in bad faith." *Forman v. Mt. Sinai Med. Ctr.*, 128 F.R.D. 591, 600 (S.D.N.Y. 1989)).

## I.  THE COUNTY MISCHARACTERIZES THE *BRUEN* TEST

The County turns the Second Amendment on its head – falsely claiming that Plaintiffs must prove that "the Second Amendment's 'plain text' creates a right[1] to possess and carry handguns without regard to a cohabitant's need for emergency mental health treatment, and free of state and local reporting requirements and administrative regulations" [Def. Br. at 7-8].

The four words of the plain text – "keep and bear Arms" – contain no such language. Nor does any sane reading of *Heller, McDonald, Caetano, Bruen,* or *Rahimi* support this theory.

The proposed conduct here, as in *Heller, McDonald,* and *Rahimi*, is the possession of handguns – keeping Arms. Just a week ago, the Supreme Court in *Rahimi* reaffirmed its holding in *Heller*: that the plain text of the Second Amendment protects the possession of firearms in the home. *United States v. Rahimi*, No. 22-915, 2024 WL 3074728, at *5 (U.S. June 21, 2024) ("In *Heller*, this Court held that the right applied to ordinary citizens within the home").

---

[1] This statement highlights the County's inability to grasp the essence of the Second Amendment. The Second Amendment does not "create a right" – it codifies the protection of a Natural and *pre-existing* right from being violated by the government. As *Heller* confirmed, "it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a *pre-existing* right. The very text of the Second Amendment implicitly recognizes the pre-existence of the right and declares only that it 'shall not be infringed.' As we said in *United States v. Cruikshank*, 92 U.S. 542, 553, 23 L.Ed. 588 (1876), '[t]his is not a right granted by the Constitution. Neither is it in any manner dependent upon that instrument for its existence.'" *Heller*, 554 U.S. at 592 (emphasis supplied). The Second Amendment "is a barrier, placing the right to keep and bear arms off limits to the Government." *Rahimi*, at *35 (Thomas, J. dissenting).

1

Without question, possessing handguns is presumptively protected by the plain text of the Second Amendment. The burden now *immediately* shifts to the County to "overcome the presumption against firearm restrictions."[2] *Bruen*, 597 U.S. at 17, 24 ("When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.").

## II. THE COUNTY FAILED TO JUSTIFY ITS REGULATIONS UNDER *BRUEN*

Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command." *Bruen*, 597 U.S. at 17 (citation omitted).

The County failed to meet its burden under the *Bruen* test, requiring summary judgment in Plaintiffs' favor.

### A. None of the Cited Cases Prohibit An Individual From Possessing Firearms Based on the Conduct and/or Firearms Ineligibility of A Third Party

*Heller* confirmed that the Second Amendment protects an *individual* right, not a collective right; yet none of the County's cases support the regulation that bars an individual from possessing handguns because of the firearms disqualification of *a third party*. The Couty also fails to identify an historical analogue for their policy of barring handgun possession because an individual failed to notify the government that they reside with a "prohibited person."

The County cites a handful of cases upholding various firearm regulations, but none of them support the Suffolk County policies challenged by Plaintiffs. *Antonyuk* involved a 'moral character' requirement for the firearm owner, *Mintz* prevents the firearm owner from possessing guns in a specific location, *McRory* and *Reese* restrict potential firearm owners between ages 18-

---

[2] *Rahimi*, at * 35.

2

20, *Ocean State* prevented <u>firearm owners</u> from owning high capacity magazines, and *Cardinale* requires <u>firearm owners</u> to take certain steps to recover their property.

The County identifies no case that prevents an individual from possessing firearms because *another person* is disqualified from possessing firearms, and none of the cases lend support for the "notification requirement" in the Handbook.

### B. *Antonyuk* Provides No Safe Haven for the County

*Antonyuk*'s ruling on the "cohabitant requirement" of Penal Law § 400.00(1)(o) is no help to the County. **First,** subsection (1)(o) only applies to concealed carry licenses, not mere possession. The County's regulation prohibits handgun possession altogether. **Second,** the purpose of the "cohabitant" disclosure is to further asses the *applicant's* moral character, not the eligibility of the cohabitants. *Antonyuk*, 89 F.4th at 329 ("…disclosure of one's cohabitants…is tantamount to the character-reference provision").

**Third,** the definition of "moral character" under § 400.00(1)(b) was narrowed by the CCIA[3] to a "modicum" of discretion[4] – restricting the formerly 'broad discretion.'[5] The CCIA did not "re-grant" discretion after *Bruen* [Def. Br. at 9], it narrowed its "moral character" assessment to "dangerousness" [§ 400.00(1)(b)] and repealed the "good cause" factor [formerly § 400.00(1)(g)][6]. *Antonyuk*, 89 F.4th at 329–30 ("More generally, we have already explained that it is constitutional for a state to make licensing decisions by reference to an *applicant's* "good moral character," at least where that "character" is defined in terms of dangerousness. It must therefore

---

[3] New York State's Concealed Carry Improvement Act of 2022.
[4] *Antonyuk*, 89 F.4th at 312.
[5] *Weinstein v. Krumpter*, 386 F. Supp. 3d 220, 231 (E.D.N.Y. 2019) (Under Penal Law § 400.00, the "licensing officer is vested with broad discretion in determining whether to issue or revoke a license to possess firearms") (citation omitted).
[6] See e.g., *Velez v. DiBella*, 77 A.D.3d 670 (2d Dept. 2010) ("good cause" under § 400.00(1)(g)). But Defendants Admit that if they 'feel' there is 'good cause' not to renew a license, the license will not be renewed [SOF 5, 60].
.

3

be constitutional for the licensing authority to investigate the *applicant's* character, and no one argues that a licensing officer may not inquire into the *applicant's* trustworthiness beyond the challenged disclosures. It follows that the State can also require modest disclosures of information that are relevant to that investigation and that will make the (permissible) assessment of dangerousness more efficient and more accurate") (emphasis added). The focus of § 400.00(1) is the eligibility of individual firearm owner/applicant…not the cohabitants.

**Fourth,** *Antonyuk*'s support of the cohabitant inquiry ***is not*** consistent with the County's regulations [Def. Br. at 9]. To the extent that the "cohabitant requirement" requires an applicant to disclose whether there are minor children residing in the home, its purpose is to ensure that the applicant will safely store his firearms from being accessed by minors. *Antonyuk*, 89 F.4th at 330.

*Antonyuk* opined, "[i]n addition to providing an alternate means by which the licensing officer can learn of potential character references, the cohabitants themselves can inform the dangerousness inquiry….The identity and characteristics of an applicant's cohabitants are obviously relevant to the dangerousness of the applicant *in situ*. For instance, if an applicant living with multiple young children was unwilling or unable to secure firearms from meddling, surely a licensing officer could conclude that the applicant cannot "be entrusted with a weapon and to use it only in a manner that does not endanger [him]self or others," N.Y. Penal L. § 400.00(1)(b)."

*Antonyuk* underscores the focus of the "cohabitant requirement" to be the firearms owner, *not* the cohabitant. In stark contrast, the County's regulations attribute the cohabitant's conduct to the licensee: It is "a common practice at the Pistol License Bureau that the entire household is held to the same standard as the licensee, the same eligibility" [SOF ¶ 85] – a fact "Admitted" by Defendants.[7] That non-disqualified ordinary people, like Plaintiffs, are barred from possessing

---

[7] Defendants' Counterstatement at ¶ 85.

handguns because of the conduct and/or disqualification of a cohabitant is repugnant to the plain text.

*Antonyuk* reasoned that the disclosure requirement would reveal whether the applicant will safely store the firearms from minor children. But applying the County's policy to the *Antonyuk* example would cause the denial and/or suspension of everyone who resides with a child - children are *de facto* disqualified from possessing firearms.

While *Antonyuk* focused on the applicant's willingness to safely store firearms, under the County's policy the "safe storage of firearms from co-habitants is *irrelevant*" [SOF ¶ 80 (emphasis added)].

Plaintiffs' safe storage of their firearms from their cohabitant son is uncontested [SOF ¶19].[8] Defendants "Admit" that Plaintiffs' handguns were "stored in the combination locked closet safe" [SOF ¶ 20].

### C. *Rahimi* Forecloses the Constitutionality of the County's Regulations

Further distancing the County's regulations from any historical footing is the Supreme Court's recent decision in *Rahimi.* In an 8-1 decision, the Supreme Court upheld a federal statute that *temporarily* disarms an individual who has been found, *after a court hearing*, "to threaten the physical safety of another" resulting in the issuance of an order of protection. *Rahimi*, at *9; see, 18 U.S.C. 922(g). But the Supreme Court drew the line 9-0 at disarming individuals alleged to be "not responsible." *Rahimi*, at *11 ("[W]e reject the Government's contention that Rahimi may be disarmed simply because he is not "responsible").

---

[8] Defendants fail to cite any evidence to support their denial of this sworn fact. Exhibits B-G, consisting of incident reports, only reveal that Plaintiffs' *son* is "negative" for a pistol license. And Defendants' Ex. E confirms that Plaintiffs' son has "no access to guns." Defendants offer no sworn declaration from any of the responding officers to counter Plaintiffs' statements. Facts within parties' summary judgment statements that are not contradicted by citations to admissible evidence are deemed admitted. Local Civil Rule 56.1(c)(d).

5

There is no assertion from the County that Plaintiffs are accused of having done anything other than (i) residing with a "prohibited person"; and (ii) not informing the Licensing Bureau that a cohabitant was transported for a mental health evaluation. Those two requirements are no indicator of Plaintiffs' "dangerousness," they do not even rise to the level of "irresponsibility," yet Plaintiffs have been barred from possessing handguns. The County has failed to identify any historical analogue to justify its regulations.

### III. DEFENDANTS ARE LIABLE FOR FOURTH AMENDMENT VIOLATIONS

SCPD's seizure of Plaintiffs' handguns is directly tied to Defendants' enforcement of the County's regulations, not Penal Law § 400.00(11)(c).

Subsection (c) only requires surrender of handguns if a license is suspended or revoked under (11)(a) or (b) - and (b) is not relevant here.

Under (a), a conviction of a felony or serious offense "or a licensee at any time becoming ineligible to obtain a license, including engaging in conduct that would have resulted in the denial of a license, under this section shall operate as or be grounds for, a revocation of the license."

There is no evidence that Plaintiffs are 'ineligible' to obtain a pistol license under § 400.00(1) – **they meet all statutory eligibility factors**.

The County has no basis under § 400.00(11) to have suspended Plaintiffs' pistol licenses – meaning that the warrantless seizure of Plaintiffs' handguns was assuredly unreasonable.[9] Likewise, the mere act of residing with a disqualified cohabitant, not notifying the Licensing Bureau of events, and/or violating the non-statutory "rules" of the "Handbook" are not

---

[9] *Juzumas v. Nassau County* is inapposite. There, the plaintiff was revoked after being convicted of a non-violent misdemeanor under the former "moral character" and "good cause" factors of § 400.00(1)(b), (n), which would not give rise to a revocation under § 400.00(1)(b) as amended by the CCIA.

6

disqualifiers to the issuance of a handgun license - under § 400.00(1) and/or any other statute or regulation.

## IV. PLAINTIFFS ESTABLISHED *MONELL* LIABILITY

Under *Monell*, an employee's act of enforcing an unconstitutional municipal policy may be considered the act of the municipality itself. *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004) citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479–80 (1986). Conversely, constitutional torts committed by city employees without official sanction or authority do not typically implicate the municipality in the deprivation of constitutional rights, and therefore the employer-employee relationship is insufficient to establish the necessary causation. *Id.*

Subsequent cases have considerably broadened the concept of official municipal action. In *Pembaur*, the Court recognized that "when a municipality decides to adopt a particular course of action, ... it surely represents an act of official government 'policy' as that term is commonly understood." *Amnesty*, 361 F.3d at 125 quoting *Pembaur*, 475 U.S. at 481. "It is not necessary, therefore, for plaintiffs to prove that a municipality has followed a particular course of action repeatedly in order to establish the existence of a municipal policy; rather, a single action taken by a municipality is sufficient to expose it to liability." *Ibid.*

Sgt. Walsh and Officer Plihcek's sworn testimony, the SCPD Pistol License Handbook, and Plaintiffs' Suspension Notices [Ex. J, K] undisputedly establish that (i) it is the general policy at SCPD that a pistol license will be suspended if a cohabitant is perceived as a "prohibited person," including any member of a licensee's household being having an "evaluation…for mental health

issues" [see, Bellantoni Reply Declaration at Ex. 11 at Bates No. 032-33[10]; Ex. M at 34-36, SOF 40, 41, 85, 86]; and (ii) if a licensee does not inform the Licensing Bureau that a cohabitant was transported for a mental health evaluation, the license will be suspended [SOF 61, 62]. Both policies are codified in the Suffolk County Pistol License Handbook [Def. Ex. J, K] and Plaintiffs' Suspension Notices [Ex. J, K].

The County failed to introduce evidence that contradicts Defendants' testimony[11] – one of whom was the Sergeant of the Licensing Bureau who suspended Plaintiffs' licenses - the Handbook, and/or the Suspension Notices. See, *Torcivia v. Suffolk Cnty., New York*, 409 F. Supp. 3d 19, 29 (E.D.N.Y. 2019), aff'd, 17 F.4th 342 (2d Cir. 2021) (*Monell* liability established where officer testified to the policy and the undisputed facts demonstrated the policy's enforcement against the plaintiff. "A reasonable juror could conclude from these facts that Plaintiff's weapons were seized pursuant to a formal County policy, particularly where Officer Adler explicitly stated that he acted pursuant to 'standard procedure'…At the very least, a reasonable juror could find that this 'standard procedure' constituted a County custom"); see also, *Milau v. Suffolk County*, 17 Civ. 6061 (JS)(SIL) (pending), which challenges Suffolk County's refusal to issue the plaintiff a pistol license because his cohabitant son is disqualified from possessing firearms – just as Plaintiffs' licenses were suspended because their cohabitant son is disqualified from possessing firearms [ECF 49 at 1-2 "Treating 'everyone in the household the same'[12] contradicts one of the central holdings in *Heller*: that the Second Amendment protects an individual right, not a collective

---

[10] Note that reference in "Section 4-Grounds for Suspension/Revocation" B(3) "[f]ailure to make any notification required by Section 2 and Section 3 of this Chapter" [Bates No. COS0033] actually refers to Sections 3 and 4, because Section 2 of this July 1 2020 Handbook (see cover page) contains notification of the "Restricted and Sensitive Locations" created in 2022 by the Concealed Carry Improvement Act (CCIA).
[11] The only circumstances where a license was not suspended was if the cohabitant moved out of the residence [Ex. M at 36].
[12] SOF ¶ 85[When asked how Tom LaMarco was "ineligible to possess handguns" based on the fact that his son is ineligible to possess firearms, Plihcek responded, "Because it's a common practice at the Pistol License Bureau that the entire household is held to the same standard as the licensee, the same eligibility" [Ex. 10 at 21]. "Admitted"].

8

right"]; see also, *Torcivia v. Suffolk County* (2014) suspending the plaintiff's pistol license because his daughter had been previously transported for mental health evaluations.

Indeed, in *Milau*, the Licensing Bureau would not even process the plaintiff's 2017 application because Mr. Milau continues to reside with his son, a prohibited person. The County's policies are a blanket prohibition on his right to possess handguns [SOF ¶ 81 (Officer Molinari did not even begin to investigate Plaintiff's application because Gregory's conviction for CPCS-7 was enough for him to make a phone call to Plaintiff), ¶82 (Molinari "would not be able to approve a license for [Plaintiff]" "while his son was in the house" "based on the policy of the police department"), ¶83 (the only factor considered by Molinari was Plaintiff's co-habitation with his son Gregory), ¶ 84 (if Plaintiff's son moved out, SCPD policies and procedures would allow Plaintiff's pistol license application to be reevaluated) [see, County Counterstatement to ¶¶ 81-84 at *Milau*, 17 Civ. 6061, ECF No. 30-2].

## CONCLUSION

Suffolk County failed to justify its firearm regulations, as required by *NYSRPA v. Bruen*, warranting summary judgment in favor of Plaintiffs and the permanent injunction of Suffolk County's policies.

Dated: July 1, 2024
       Scarsdale, New York

THE BELLANTONI LAW FIRM, PLLC
*Attorneys for Plaintiffs*

By: _____/s_____
Amy L. Bellantoni (AB3061)
2 Overhill Road, Suite 400
Scarsdale, New York 10598
abell@bellantoni-law.com

9