

November 7, 2024

**VIA ECF**

Hon. Gary R. Brown
U.S. District Court, EDNY
100 Federal Plaza, Courtroom 1020
Central Islip, New York 11722

    Re:    *LaMarco v. Suffolk County*
            22 Civ. 4629 (GRB) (JMW)

Your Honor,

    I represent the plaintiffs, Thomas and Diane LaMarco, in the above-referenced matter. Please accept the following in response to the status report filed by the County this afternoon.

    On July 2, 2023, this Court DIRECTED the County "to file a supplemental brief of no more than 10 pages setting forth its position on the proper application of *Bruen* and *United States v. Rahimi*, No. 22-915, 2024 WL 3074728 (U.S. June 21, 2024) to the pending motion within 10 days…" The County failed to comply and, instead, filed a letter indicating that the "County now believes that it would not be wise to continue litigating the question of whether the alleged policies challenged in this case comport with the Second Amendment. Instead, the County wishes to resolve this case by making policy changes sought by plaintiffs and affording them pecuniary relief" [ECF 30] Plaintiffs opposed this request and urged the Court to adjudicate their summary judgment motion as submitted [ECF 31].

    On August 13, 2024, the Court granted the County "45 days to develop and explore specific policy changes to resolve this matter that should be presented to plaintiffs in the form of a ***consent decree***" (emphasis added). Not having had any experience with consent decrees, I was initially frustrated that the process had (seemingly) stalled. However, after gaining an understanding of the breadth of a consent decree, I was cautiously hopeful that an agreement could be reached with the County.

    On September 27, 2024, I received the County's sparse proposed consent decree [Ex. 1]. On October 15, Plaintiffs' proposed Consent Decree was emailed to the County [Ex. 2] with a request that they indicate their acceptance or rejection of same by October 15. On October 15, I received an email from the County indicating that counsel had been out of the office for several days without access to email and that she was "still working on contacting all who need to weigh in" on the consent decree.

2 Overhill Road, Suite 400
Scarsdale, New York 10583

info@bellantoni-law.com
www.bellantoni-law.com

(914) 367-0090 (t)
(888) 763-9761 (f)

At around the same time, Defendants voluntarily reinstated Plaintiffs' pistol licenses. But as licensees with a prohibited person residing with them, Plaintiffs continue to be subject to the challenged policy. As such, they maintain standing to seek injunctive and declaratory relief.

To date, I have received no feedback on the proposed consent decree. And while the County now represents that SCPD "will no longer deny pistol license applications or suspend pistol licenses solely on the basis that a cohabitant of the applicant/licensee has a history of mental illness, provided that there are no restrictive Court Orders addressing the possession of weapons in the cohabitant's residence" their self-imposed 'change' is both insufficient and voluntary.

First, the scope of the purportedly amended policy does not address Plaintiffs' allegations, harms, or the threat of future enforcement. Plaintiffs' Second Amendment challenge is that *any* negative action taken against an individual based on *another person's* legal status, condition, or conduct violates the plain text of the Second Amendment. The Second Amendment protects an 'individual' right; it cannot be infringed because someone else did something.

Second, the issue for Plaintiffs is not only that their son had a "history of mental illness;" the suspension of their licenses and confiscation of their handguns was also based on the fact that (i) police responded to the home, (ii) they did not inform the Licensing Bureau that police responded to the home, and (iii) that their son was transported for an evaluation.

Third, Defendants' acts are voluntary; there is no court order, consent decree, or any other enforceable order with penalties for non-compliance to prevent Defendants from returning to their old ways and the likelihood of repetition for Plaintiffs is substantial.

Fourth, notwithstanding the reinstatement of Plaintiffs' licenses, Defendants *persisted* in enforcing their indefensible policy even after they publicly admitted in July 2024 that they have no legal defense – against Plaintiffs whose licenses continued to be suspended and handguns seized for 3 additional months and against others, including Thomas Webber who was denied a license because, unbeknownst to him, a family member was transported for an evaluation several years before he filed his application [*Webber v. Suffolk County*, 24 Civ. 6387 (GRB)(JMW) (denial of license based on enforcement of cohabitant policy)] and William J. Guido whose license was suspended because his wife was transported for a mental health evaluation in June 2024 – whose license is *still* suspended and whose handguns are still in the possession of SCPD. See, *Guido v. Suffolk County, et al.*, 24 Civ 7766 (judge assignment pending).

What's more, the exact same letter that was filed by the County on the Court's docket today was filed by the County in *Milau v. Suffolk County,* 17 Civ. 06061 (SIL) [ECF 56] – but there is no allegation in *Milau* that the plaintiff's son has a "history of mental illness." Mr. Milau's son is a prohibited person because he has a misdemeanor conviction for possessing a controlled substance. The policy as described by Plaintiffs, not as surgically tailored by the County, needs to be enjoined.

The County's pattern of inexorable gameplaying calls out for a court order with resulting penalties for non-compliance, as there has been no good faith attempt to eliminate a patently unconstitutional policy. Thank you for the Court's consideration.

Respectfully,

*Amy L. Bellantoni*
Amy L. Bellantoni

cc: Arlene Zwilling (ECF)